IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Michelle W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50195 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff's motion for summary judgment [18], is granted, the Commissioner's motion for summary judgment [25], is denied, and the decision of the ALJ is reversed and remanded.

## BACKGROUND

A. Procedural History

Plaintiff Michelle W. ("Plaintiff") filed an application for supplemental security income on May 26, 2017, alleging a disability beginning January 1, 2017. R. 18. Her application was initially denied on August 8, 2017, and upon reconsideration on October 16, 2017. *Id.* Following a written request for a hearing, Administrative Law Judge Cynthia M. Bretthauer ("ALJ") held a hearing on September 18, 2018. R. 37–80. Plaintiff appeared with counsel and testified at the hearing. *Id.* The ALJ also heard testimony from Dr. Michael Carney, a medical expert, and James Radke, a vocational expert. *Id.* On December 17, 2018, the ALJ issued her written opinion denying Plaintiff's claims for supplemental security income. R. 18–30. Plaintiff appealed the decision to the Appeals Council, which denied her request for review. R. 1–4. Plaintiff now seeks review of the decision, which stands as the final decision of the Commissioner. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

B. The Medical Opinions

State agency doctors Henry Rohs, MD, and James Madison, MD, reviewed Plaintiff's medical records and provided their opinions as to her physical residual functional capacity. In his assessment dated August 14, 2017, Dr. Rohs stated that Plaintiff had a history of carpal tunnel syndrome and bilateral rotator cuff tears and possibly had a left rotator cuff tear. R. 90. Dr. Rohs concluded that Plaintiff "can frequently use her [right] arm for reaching in any directions and occasionally use her [left] arm for reaching in any direction." R. 90. In his reconsideration of Dr. Rohs's assessment dated October 13, 2017, Dr. Madison affirmed Dr. Rohs's opinion regarding

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

Plaintiff's reaching limitations. R. 106.

State agency psychological consultants Linda Lanier, Ph.D., and David Voss, Ph.D., reviewed Plaintiff's medical records and provided their opinions as to her mental residual functional capacity. In her assessment dated July 20, 2017, Dr. Lanier described Plaintiff's capacity as "limited social tolerance outside of her home due to depression and anxiety." R. 91. She stated that Plaintiff's ability to interact appropriately with the general public was markedly limited and that her ability to accept instructions and respond to supervisor criticism was moderately limited. R. 91. Dr. Lanier further opined that she "retains the capacity to understand and remember complex instructions," "need[s] only common supervision," and "can relate appropriate in socially undemanding settings with low stress demands that require only brief superficial interactions and with reduced interpersonal context away from the general public." R. 92. In his reconsideration of Dr. Lanier's assessment dated October 12, 2017, Dr. Voss affirmed Dr. Lanier's determination that Plaintiff retained the "capacity for more than simple related activities work with social limitations." R. 103.

C. The ALJ's Decision

On December 17, 2018, the ALJ found that Plaintiff did not qualify as disabled. R. 18–30. Before beginning the five-step analysis, ALJ concluded that certain written evidence submitted less than five business days before the scheduled hearing in violation of 20 CFR 404.935(a), could be admitted into the record under 20 CFR 404.935(b). R. 18. The ALJ then denied the claimant's request for a supplemental hearing or alternatively to provide interrogatories based on the post-hearing evidence submissions to Dr. Carney. R. 18–19.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity. R. 21. At step two, the ALJ found that Plaintiff had the following severe impairments: "bilateral carpal tunnel syndrome; left shoulder arthralgias with history of bilateral rotator cuff tears; and major depressive disorder." R. 21. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, paying particular attention to listings 1.02 and 12.04. R. 21–22.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except that she can perform: frequent bilateral grasp and fine manipulations; frequent crawling and crouching; occasional stopping, climbing, and kneeling; frequent bilateral overheard reaching; simple, repetitive and routine, 1-3 step instructions, with routine changes only; and occasional contact with the general public." R. 23. In arriving at this RFC determination, the ALJ relied principally on the medical opinions of the state agency doctors. The ALJ gave "great weight" to Dr. Lanier's opinion as affirmed by Dr. Voss regarding Plaintiff's mental RFC. R. 26. While finding "that the State agency doctors exercised an abundance of caution in finding limitations even as great as they did," the ALJ adopted the Dr. Rohs's and Dr. Madison's opinions regarding Plaintiff's physical RFC except for their limitation of her upper left extremity to only occasional reaching. R. 24–25.

At step four, the ALJ found Plaintiff unable to perform any past relevant work. R. 27. At step five, the ALJ found there were jobs that existed in significant numbers in the national economy

that she could have performed. R. 29. Because of these findings, the ALJ found that Plaintiff was not disabled. R. 29.

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at * 5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at * 7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, "[a]n ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). An ALJ "must provide a 'logical bridge' between the evidence and his conclusions*." Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir.2010)).

## DISCUSSION

Plaintiff raises two overarching arguments in her motion for summary judgment both of which pertain to the ALJ's RFC analysis: the ALJ erred in evaluating the medical opinions of record; and the ALJ incorrectly assessed Plaintiff's symptoms. In making these arguments, Plaintiff identifies several discrete issues in the ALJ's analysis. Because this Court finds that the ALJ erred in evaluating the medical opinion evidence as it relates to Plaintiff's reaching limitations, the other issues will not be addressed here.

While an ALJ need not defer to a particular medical opinion, "an ALJ 'must not succumb to the temptation to play doctor'" *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

As Plaintiff's claim was filed after March 17, 2017, "the evaluation of medical opinion

3

evidence is governed by 20 C.F.R. § 404.1520c." *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022). "Under § 404.1520c, the ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s).'" *Id*. (citing 20 C.F.R. § 404.1520c(a)). "Instead, the ALJ must consider a variety of factors in assessing opinion evidence, including the supportability and consistency of the opinion, the source's relationship with the claimant, and the source's specialization." *Id*. (citing 20 C.F.R. § 404.1520c(a), (c)). The ALJ must "explain how [she] considered the supportability and consistency factors," but is not required to address the other factors in her decision. *Id.*

In this case, the ALJ adopted the medical opinions of Dr. Rohs and Dr. Madison except for their finding that Plaintiff was limited to only frequent reaching with her upper-right extremity and only occasional reaching with her upper-left extremity. The ALJ instead determined that Plaintiff was unlimited in her ability to reach in all directions with either extremity, except for reaching overhead which the ALJ limited to frequent. Plaintiff contends that the ALJ "played doctor" in impermissibly substituting the judgement of the medical experts for her own regarding the upper-left extremity limitation and that this error necessitates remand. The Court finds that the ALJ failed to explain why she found the medical opinion of the upper-left extremity limitation unsupported by the evidence and that in disregarding the only medical opinion evidence regarding Plaintiff's reaching ability erroneously substituted her own judgement for that of the medical experts.

On July 11, 2017, Roopa K. Karri, MD, performed an Internal Medicine Consultative Examination of Plaintiff for the Bureau of Disability Determination Services. Dr. Karri noted that the range of motion in the right shoulder was normal, but her range of motion in the left shoulder was impaired. R. 424. Specifically, she recorded that the left flexion was limited to 140 degrees, left extension was limited to 30 degrees, and the left abduction was limited to 130 degrees. *Id*. Additionally she noted a limited range of motion of Plaintiff's cervical spine and tenderness in Plaintiff's cervical spine, lumbar spine, and left shoulder. *Id*. While noting Plaintiff's history of carpal tunnel syndrome, Dr. Karri described Plaintiff's grip strength as normal. *Id*.

Later in 2017, Surbhi Panchal, MD, of Lake Cook Orthopedics, saw Plaintiff in connection with her left shoulder pain and carpal tunnel syndrome. On November 6, 2017, Plaintiff rated the pain in her left shoulder as "8/10" and expressed a "painful range of motion." R. 445. Dr. Panchal noted that Plaintiff described the pain as intermittent, ranging from achiness to occasionally very sharp pain, but that "it does not limit her too much." *Id*. Dr. Panchal stated that Plaintiff had full strength and full range of motion in her left shoulder. R. 446. While Dr. Panchal recorded that the x-ray of Plaintiff's left shoulder showed "no acute pathology," he noted a positive Hawkins test. *Id*. Dr. Panchal determined that Plaintiff suffered from impingement syndrome and advised Plaintiff to begin physical therapy and undertake an ultrasound to determine if she suffered a significant rotator cuff tear. *Id*. Regarding Plaintiff's carpal tunnel syndrome, Dr. Panchal stated that the Plaintiff reported that a 2013 EMG showed moderate carpal tunnel in both hands and that her left hand was worse than her right. *Id*. Dr. Panchal recommended that Plaintiff undergo an EMG to assess the extent of her carpal tunnel syndrome. *Id*.

On December 18, 2017, Plaintiff returned to Dr. Panchal's office to review the results of an EMG performed in connection to her bilateral carpal tunnel syndrome. R. 455. Dr. Panchal

stated that the EMG confirmed that Plaintiff suffered from carpal tunnel syndrome in both extremities, but that her left was worse than her right. R. 457. Dr. Panchal recommended surgery to treat the condition first in her left extremity and then her right. *Id*.

In describing the medical record in her decision, the ALJ stated that the 2017 EMG examinations showed bilateral carpal tunnel syndrome, "worse on the left with moderate to severe findings" and that while Plaintiff's physician recommended carpal tunnel release surgery Plaintiff testified that she could not afford the cost. R. 24. The ALJ stated that despite Plaintiff's positive Hawkins test and diagnosis of impingement syndrome, the November 2017 x-ray showed no acute pathology and the physical examination of her shoulder showed that "she maintained a full range of motion and full strength in the shoulder." *Id*. The ALJ described the July 2017 consultative examination as finding that Plaintiff's condition was "normal except for some subjective tenderness in the cervical spine, lumbar spine, and left shoulder, as well as some mild loss in range of motion of the left shoulder." *Id*.

The ALJ stated that Dr. Rohs's and Dr. Madison's opinions regarding Plaintiff's reaching limitations were not supported because there was "not enough objective medical findings" to substantiate them. R. 25. While her summary of the medical record provides some explanation of her rationale, it does not provide a satisfactory explanation of how she reached this determination. The ALJ's summary of the evidence makes clear that there is some objective evidence supporting a left-upper extremity reaching limitation in the medical record. The ALJ found that the objective medical evidence provides sufficient support for Dr. Rohs's and Dr. Madison's limitation of Plaintiff to only frequent overhead reaching in both arms. Dr. Rohs and Dr. Madison opined based on the medical evidence that Plaintiff's RFC should limit her to occasional reaching with her left arm. The ALJ found that Plaintiff suffers from "left shoulder arthralgias with history of bilateral rotator cuff tears." R. 21. The evidence as summarized by the ALJ shows that Plaintiff suffers from a condition in her left shoulder. Yet, the ALJ provides only a conclusory statement that the medical opinions regarding Plaintiff's ability to reach with her left arm are unsupported by the record.

The ALJ's failure to provide her reasoning behind discounting the medical opinions suggests that she "played doctor" by substituting her opinion for theirs. An ALJ impermissibly plays doctor "by substituting [her] own personal observations for the considered judgements of medical professionals." *See Turner v. Astrue*, 390 F. App'x 581, 584 (7th Cir. 2010). As the ALJ notes in her decision, her assessment of the opinions was made in the "absence of any other medical opinions." R. 24. Thus, in deciding whether to adopt the state agency doctors' opinion regarding Plaintiff's RFC, the ALJ relied on the same evidence reviewed by Dr. Rohs and Dr. Madison without the aid of any alternative medical expert opinions. While an ALJ is not required to defer blindly to medical opinions, she "must not succumb to the temptation to . . . make [her] own independent medical findings," *Rohan*, 98 F.3d at 970, and then adopt the medical opinions only to the extent to which they are consistent with her own independent findings. The ALJ's statement that "State agency doctors exercised an abundance of caution in finding limitations even as great as they did," *see* R. 24, suggests that she assessed Plaintiff's RFC based on her review of the evidence and determined that the medical opinions went beyond what she deemed to be the Plaintiff's physical limitations.

The ALJ's error in discounting the medical opinion regarding Plaintiff's reaching

5

limitation was not harmless. "An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'" *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)). As "the harmless error standard applies to judicial review of administrative decisions," a court will not remand a case to the ALJ if "convinced that the ALJ will reach the same result." *Id*. (quoting *Butler*, 4 F.4th at 504). Each of the representative occupations, identified by Mr. Radke in his testimony, that an individual with the Plaintiff's age, education, work experience, and RFC would be able perform involve frequent reaching. R. 77–78. *See* DICOT 209.687-026, 1991 WL 671813 (mail clerk); DICOT 323.687-014, 1991 WL 672783 (cleaner); DICOT 311.677-010; 1991 WL 672694 (cafeteria attendant). The ALJ did not ask Mr. Radke if an individual limited to only occasional reaching with the upper left extremity could perform the representative occupations he identified. R. 77–80. In her step five analysis, the ALJ relied upon Mr. Radke's testimony in finding that Plaintiff could perform a significant number of jobs in the national economy. Since the inclusion of the limitation could have changed the ALJ's step five analysis, the Court is not convinced that if not for the error the ALJ would have reached the same determination that Plaintiff was not disabled. Therefore, the case must be remanded for reconsideration of this issue. On remand, the ALJ is encouraged to consider the other issues raised in this appeal.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [18], is granted, the Commissioner's motion for summary judgment [25], is denied, and the decision of the ALJ is reversed and remanded.

Date: September 29, 2022                ENTER:

*Margaret J. Schneider*
United States Magistrate Judge